UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

------------------------------------------- x

ERNEST HUANG,                             :

        Plaintiff,                    :   Civil Action No. 3:19-cv-803

        v.                            :

                                      :

HONOR DEFENSE LLC,                        :

        Defendant.                    :

                                      :

------------------------------------------- x

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff ERNEST HUANG ("Huang" or "Plaintiff"), as and for his complaint against Defendant HONOR DEFENSE LLC ("Honor Defense" or "Defendant"), by and through his attorneys Berg & Androphy, states and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from Honor Defense's negligent design and manufacture of its "Honor Guard" handgun, a 9 mm semi-automatic pistol.

2. In January 2019, Huang purchased an Honor Guard pistol from a retailer in St. Augustine. Unbeknownst to Huang (but fully known to Defendant), the pistol Huang purchased was not "drop-safe." Responsibly designed and manufactured handguns, if accidentally dropped, will not fire when striking the ground. However, the Honor Guard pistol is defectively designed and/or manufactured, and an accidentally-dropped Honor Guard pistol presents a dangerous game of Russian roulette.

3. Huang learned this fact the hard way when, in May 2019, he accidentally dropped his Honor Guard pistol from waist height. Even though the pistol remained holstered during its fall, it nonetheless discharged upon impacting the floor, shooting Huang in the leg from close range, resulting in grievous injuries.

4. Weapons manufacturers take significant steps to ensure that the minimal force of a drop does not cause a handgun to "drop-fire." Published data from the Center for Disease Control and Prevention demonstrates that only a small percentage of accidental discharges of handguns result from dropped handguns. Further, since dropping a handgun is an unintentional accident – and a foreseeable one at that – dropping a handgun is not reasonably preventable and cannot be ameliorated with a mere warning, and any handgun that discharges upon dropping would be, and is, defective as designed and/or manufactured. Unfortunately for Huang, his Honor Guard pistol was defectively designed and/or manufactured, a fact known to Honor Defense.

5. Indeed, in late 2017 – about a year before Huang purchased his Honor Defense pistol – handgun enthusiasts had demonstrated, by among other things, YouTube videos that Honor Guard pistols fire when impacted, in particular, by a drop.

6. Honor Defense learned of these demonstrations, but its response was woefully inadequate. First, Honor Defense immediately denied the issue and went so far as to publish a video purporting to show a loaded Honor Guard handgun held firmly in a vise grip not firing upon repeated impact by a hammer. Honor Defense also announced on Facebook that its handguns had passed a drop test. However, after an onslaught of user testing confirmed that the handgun was in fact dangerously not drop-safe, Honor Defense relented and offered to install "upgrades" on extant Honor Guard pistols. Honor Defense also made vague assurances that it would address this defect on newly-manufactured Honor Guard pistols.

7. However, when Huang purchased his Honor Guard pistol in January 2019, nothing in or on its packaging made Huang aware that this pistol was not drop-safe, nor was he made aware of any available "upgrade." Further, the fact that Huang's pistol discharged when dropped demonstrates that Defendant had done nothing to address the drop-safe problem in its Honor Guard pistols.

8. In short, despite knowing that a serious defect existed in its Honor Guard pistols, Defendant did nothing to re-design those pistols or otherwise protect its customers (or anyone within range when an Honor Guard pistol was dropped) from serious harm.

9. As set forth in more detail below, because of Honor Defense's defectively designed and manufactured pistol, Plaintiff has suffered serious injury and is entitled to an award of damages, the amount of which is to be determined at trial.

## PARTIES

10. Plaintiff is a natural person domiciled in the State of Florida, residing in Flagler County at 58 Fleetwood Drive, Palm Coast, Florida 32137.

11. Defendant Honor Defense is a Georgia limited liability company having its principal place of business at 2295 Skelton Road, Unit D-1, Gainesville, Georgia 30501.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(2). There is complete diversity of citizenship as between Plaintiff, a natural person domiciled in Florida, and Defendant, a Georgia company, and the damages at issue in this action exceed $75,000.

13. Jurisdiction over Defendant is appropriate under Fla. Stat. Ann. ("F.S.A.") § 48.193(1)(a)(1) because Defendant operates, conducts, engages in and/or carries on a business in Florida.

14. Jurisdiction over Defendant is appropriate under F.S.A. § 48.193(1)(a)(2) because Defendant committed a tortious act within the State of Florida.

15. Jurisdiction over Defendant is appropriate under F.S.A. § 48.193(1)(a)(6)(b) because, although Defendant's principal place of business is located outside the State of Florida, Defendant nonetheless caused physical injury to Plaintiff within the State of Florida.

16. Jurisdiction over Defendant is appropriate under F.S.A. § 48.193(2) because Defendant is engaged in substantial and not isolated activity within this state. Specifically, Defendant manufactures handguns and then regularly transports those weapons into the State of Florida. Those handguns are then offered for sale by numerous brick-and-mortar gun retailers physically located all over the State of Florida. According to Defendant's own website, there are 22 such retailers in the State of Florida located within just 100 miles of Defendant's home.

17. Because it deliberately directs the sales of its handguns into the State of Florida, Defendant should reasonably anticipate being haled into court in the State of Florida.

18. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) as Plaintiff sustained injuries in Flagler County, Florida as a result of Defendant's negligence. Further, Defendant's tortious failure to warn Plaintiff about the unsafe nature of Defendant's Honor Guard pistols took place in Florida.

## FACTUAL ALLEGATIONS

### I. The Injury

19. Huang is a relatively young man and father of four children, who range in age from one-and-a-half to 13 years old. As of the date of this Complaint, Huang's wife is over seven months pregnant with his fifth child.

20. Huang recently retired after 16 years of service with the New York City Police Department ("NYPD"), during which time he received extensive training and experience in the

4

handling and use of firearms. Prior to the accident on which this Complaint is based, Huang was preparing to look for new employment in his new home state of Florida.

21. Huang became a police officer in 2003, and has owned handguns ever since. During his tenure as a police officer, Huang consistently achieved high scores on requisite NYPD firearm proficiency and handling tests. In addition to departmental training, Huang routinely performed cleaning and maintenance of his weapons, all without incident. Since 2003, Huang has owned several 9 mm semi-automatic pistols.

22. On January 23, 2019, Huang purchased Defendant's Honor Guard 9 mm semi-automatic pistol, model number HG9SCF Fist® (the "Honor Guard Pistol"), from Ace Firearms in St. Augustine, Florida. At no time after January 23, 2019, did Huang change, modify or alter the Honor Guard Pistol in any fashion.

23. On its website, Defendant expressly warrants that the Honor Guard Pistol "was originally manufactured free of defects in material and mechanical function."

24. On May 29, 2019, Huang was carrying his Honor Guard Pistol in his home, holstered, when it accidentally dropped.

25. At no time during the pistol's fall did Huang touch the trigger – indeed, it is a basic tenet of handgun safety that one does not try to catch a falling gun. Further, the Honor Guard Pistol remained holstered while falling, rendering the trigger inaccessible.

26. The Honor Guard Pistol was dropped from waist height and thus fell no more than about three feet. However, despite that minimal drop distance, upon striking the ground, the Honor Guard Pistol discharged, blasting Huang at close range in the lower left leg. The discharged round emerged from Huang's leg and passed through the ceiling. Huang's three year-old son was standing next to Huang when this shooting occurred; Huang's wife and youngest son were just a few feet away.

27. As a result of that shooting, Huang sustained grievous injuries to his leg, requiring two surgeries and the insertion of hardware to repair the bones. There is a strong likelihood that Huang will have to undergo additional surgeries in the future. However, even if Huang undergoes additional surgeries, he may still be left with permanent nerve and bone damage, and faces the possibility of losing the effective use of his left foot altogether. The shooting has caused Huang great pain and suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income and the loss of future earning capacity and medical expenses. These injuries are permanent and continuing in nature; Huang will continue to suffer these losses and impairments in the future.

## II. Defendant's Defective Honor Guard Pistols

28. According to Defendant, "Honor Defense® pistols have been called 'the best single stack 9mm available'" and Defendant is "guided by design input from security professionals and veterans[.]" Supposedly, "[t]he result is . . . the most accurate, comfortable and reliable single-stack 9mm pistol." (A "single stack" pistol has a detachable magazine that "stacks" bullets in a single, vertical row.)

29. Defendant also proclaims that it is "committed to safety and ensuring [it] produce[s] the finest possible firearms" that "exceed[] industry standards[.]"

30. On its website, Defendant claims that all of its "pistols meet or exceed industry and U.S.A. standards for safety. These include the American National Standards Institute (ANSI [("ANSI")]) / Sporting Arms Ammunition Manufacturers' Institute, Inc. (SAAMI® [("SAAMI")]), and the National Institute of Justice (NIJ [("NIJ")]) test protocols. Abusive handling (drop tests and jar off tests) have been conducted internally and confirmed by an outside laboratory[.]"

31. These claims are untrue. ANSI/SAAMI performance standards specify that pistols should be drop-safe. Defendant's Honor Guard pistols fail to meet those standards.

32. Specifically, in order to ensure that pistols are drop-safe, SAAMI publishes a standard "to provide test procedures that will aid the designer and manufacturer in evaluating the performance of new designs of firearms under certain conditions of abusive mishandling." SAAMI Z299.5-2016, *Voluntary Industry Performance Standards Criteria for Evaluation of New Firearms Designs Under Conditions of Abusive Mishandling for the Use of Commercial Manufacturers* ("SAAMI Z299"), § 2.

33. SAAMI Z299 provides three methods by which manufacturers, such as Honor Defense, can determine whether their weapons are drop-safe. One such method, unsurprisingly, is the "Drop Test," by which a handgun in the "Safe Carrying" condition is dropped from a height of four feet onto a rubber mat, under a number of specified testing conditions. SAAMI Z299 § 5.

34. The second method is the "Exposed Hammer Test," which "simulates the dropping of the handgun on its exposed hammer or striker" by either dropping a gun in the "Safe Carrying" condition onto a steel surface or dropping a weight onto the handgun's exposed hammer or striker. SAAMI Z299 § 6. As with the Drop Test, SAAMI Z299 provides specific criteria for performing the Exposed Hammer Test. *Id.*

35. The third method is the "Jar Off Test," which is a drop test involving a cocked ("Safety 'Off'") gun. SAAMI Z299 § 7.

36. Although Defendant proclaims its weapons "meet or exceed" SAAMI standards, they do not. On December 18, 2017, the YouTube channel "Firearm Rack" published a video

(the "Rack Video") entitled, "The Honor Guard Is Not Drop Safe They Knew Months Ago!"[1]  In the Rack Video, the host ("Roberts") begins:  "Today, we're going to talk about the Honor Defense Honor Guard . . . and probably why you should not buy one or carry it[.]"

37.     In the Rack Video, on camera, Roberts performs both a Drop Test and Exposed Hammer Test on an Honor Guard pistol, like the one which spontaneously shot Huang.  The weapon discharged both times.  Because of those results, Roberts recommended to his viewers that they not carry an Honor Guard pistol.

38.     Honor Defense responded a day later, on December 19, 2017, by sending a video to Sootch00 Fun Gun Reviews for publication on Facebook purporting to show an Honor Guard pistol (although the handgun is not shown to be loaded with a testing cartridge in the video) grasped in a vise and being struck repeatedly with a hammer, though not discharging.  The post stated:  "There's a recent video showing the Honor Guard firing when hit with a hammer.  I spoke with Gary at Honor Defense and he sent their testing video."[2]

39.     A pistol locked into a vise being stuck repeatedly by a hammer does not replicate a drop test (or comport with the testing procedures laid out in SAAMI Z299), as a drop test subjects the trigger mechanism to inertia, which simulates the risk of causing a discharge; the video was an attempt by Honor Guard to mislead the general public about the safety of their pistol.

40.     Just two days after that, on December 21, 2017, Honor Defense published a statement on Facebook denying any drop-safe issue with Honor Guard handguns, claiming: "Honor Defense has always complied with industry testing standards.  Our products passed

---

[1] Available at:  https://www.youtube.com/watch?v=dvuv09VgALs.

[2] Available at: https://www.facebook.com/Sootch00FunGunReviews/videos/1584387458316155/.

[SAMMI Z299] requirements for Abusive Mishandling, which includes a Drop Test and Jar-Off Test. These tests were conducted internally and by an independent facility approved by the State of California."

41. Further, in a remarkable expression of utter contempt for its customers, Honor Defense also commented on their post: "[N]o gun company can overcome Darwin."

42. Notwithstanding Honor Defense's claim that the Honor Guard passes the State of California's safety standards, the Honor Guard does not appear on the State of California's roster of handguns certified for sale.[3]

43. Despite Defendant's denials, other YouTube hosts and firearm-related websites immediately saw through Honor Defense's misinformation and performed their own Drop Tests and Exposed Hammer Tests on Honor Guard pistols. One tester wrote: "The Honor Guard is not, in fact, drop-safe. In my tests, it couldn't sustain even a relatively minor impact to the rear of the slide without releasing the striker. . . . I'd now be concerned about simply carrying an Honor Guard in a holster."[4]

---

[3] *See* State of California Department of Justice Roster of Handguns Certified for Sale, available at: https://www.oag.ca.gov/firearms/certguns ("As of January 1, 2001, no handgun may be manufactured within California, imported into California for sale, lent, given, kept for sale, or offered/exposed for sale unless that handgun model has passed firing, safety, and drop tests and is certified for sale in California by the Department of Justice. Private party transfers, curio/relic handguns, certain single-action revolvers, and pawn/consignment returns are exempt from this requirement"). Of the 777 guns approved for sale in California, Honor Guard is not listed.

[4] Jeremy S., *Confirmed: The Honor Guard Pistol Is Not Drop (or Impact) Safe*, TheTruthAboutGuns.com, Dec. 19, 2017, available at: https://www.thetruthaboutguns.com/confirmed-honor-guard-pistol-not-drop-impact-safe/.

44. In the aftermath of the Rack Video and others like it, as well as Defendant's denials, "President of Honor Defense Gary Ramey ['Ramey'] sat down with Guns.com, explaining that '[Defendant] was blind-sided by the [Rack V]ideo.'"[5]

45. Ramey, who is still President of Honor Defense, went on to tell Guns.com that Defendant immediately explored the allegations made in the Rack Video and "we reached out to five outside engineering groups that work in the firearm industry. . . . We've asked each of them to review our firearms and give us an assessment" and "[w]e're going to start some new testing to see if we can overcome this issue."

46. Ramey concluded, "[w]e're doing what any reasonable company would do. We're assessing what we saw and we're trying to figure out what could make that happen" and "[w]e're going to use this as an opportunity. If there's an opportunity to improve, we're going to improve."

47. However, despite knowing that Honor Guard pistols were not drop-safe, Defendant failed and refused to recall the defective Honor Guard pistols. Instead, in or about January 2018, Defendant quietly posted a notice on its website concerning a voluntary "upgrade," available to purchasers who send their handguns back to Defendant for installation of that "upgrade." Customers who happen to see this page (the link to which can be found only at the very bottom of Defendant's website) are given instructions as to how to voluntarily return their pistols to Honor Defense for installation of this "upgrade."

48. Ramey appeared in another YouTube video, dated June 13, 2018, entitled: "Honor Defense Honor Guard Updates" (the "Updates Video").[6] In the Updates Video, Ramey

---

[5] Jacki Billings, *Honor Guard Renews Debate On Drop Safety Standards*, Guns.com, Dec. 29, 2017, available at: https://www.guns.com/news/2017/12/29/honor-guard-drop-safety-standards.

[6] Available at: https://www.youtube.com/watch?v=qN8rXiJWJnU.

again confirms that Defendant was aware of the Rack Video and others like it, which depicted repeated drop test failures by Honor Guard pistols. Ramey explained that Defendant's solution was to offer "a voluntary upgrade." Ramey went on to assert that new Honor Guard pistols now pass all drop tests called for by SAAMI/ANSI and NIJ.

49. In the Updates Video, Ramey described how the voluntary "upgrade" strengthens the striker mechanism, resulting in a "double fail-safe system." Notably, Ramsey also promised that, on newly-manufactured Honor Guard pistols, Defendant had made changes "to keep everything locked in place."

50. Indeed, Ramey's statements were false. The Honor Guard Pistol that Huang purchased in January 2019 did not come with any "upgrade" installed, nor was information about the availability of this "upgrade" provided with the pistol's packaging or user manual. Further, the Honor Guard Pistol had clearly not been redesigned to ensure that "everything" was "locked in place."

51. Notably, Defendant has not caused the December 19, 2017 Facebook video, which misleadingly purports to show the Honor Guard pistol to be drop-safe, to be removed – Honor Guard is still effectively claiming drop-safety based on that video not withstanding their subsequent admission and upgrade offering.

52. Although Honor Defense knew that Honor Guard pistols were not drop-safe, Defendant failed to: (a) redesign those pistols after 2017; (b) alert purchasers like Plaintiff to the drop-safe issue in the written materials provided with Honor Guard pistols; or (c) provide the supposed "upgrade" with Honor Guard pistols sold after 2017.

53. As a firearms manufacturer, Defendant has a duty to purchasers like Huang (as well as to the general public) to protect them against unreasonable risks associated with the normal and intended use of its firearms. Guns, like many products, get accidentally dropped in

the ordinary course of usage (which is why, for instance, SAMMI publishes drop test specifications in the first place). Manufacturing and selling firearms which could (and do) spontaneously discharge when dropped from a few feet is a gross breach of that duty.

54. Honor Guard pistols are not drop-safe and thus are defective and/or unreasonably dangerous. Defendant knew about this defect yet did not address it through a redesign or provide Huang with any warning. Huang's injuries were the foreseeable and direct consequence of both Defendant's defective design and manufacturing of Honor Guard pistols, as well as Defendant's failure to warn Huang.

## COUNT I

### (Damages: Strict Product Liability)

55. Plaintiff re-alleges the allegations of Paragraphs 1 through 54 of this Complaint as if all of those allegations were specifically stated in this cause of action.

56. Defendant is the manufacturer of Honor Guard pistols, a product which Defendant offers for sale throughout the State of Florida.

57. Plaintiff purchased the Honor Guard Pistol on January 23, 2019 in St. Augustine, Florida.

58. On May 23, 2019, Plaintiff sustained grievous injuries when he accidentally dropped the Honor Guard Pistol. Huang did not grab at or touch the trigger as the handgun fell; in fact, the pistol remained holstered during its fall. Nonetheless, upon hitting the ground, the Honor Guard Pistol discharged, shooting Plaintiff in the leg.

59. The Honor Guard Pistol was not drop-safe and was thus defective and unreasonably dangerous. The Honor Guard Pistol's defect existed when the pistol left Defendant's control, as well as when the pistol shot Plaintiff. Plaintiff made no alterations, changes or modifications to the Honor Guard Pistol.

60.     The defective and unreasonably dangerous nature of the Honor Guard Pistol was the proximate cause of Plaintiff's injuries.  Indeed, had the pistol been drop-safe, it would not have discharged when accidentally dropped by Plaintiff.

61.     As a result of Defendant's defective product, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

62.      By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for compensatory damages in an amount to be determined at trial, but in excess of $75,000.

## COUNT II

### (Damages:  Negligent Design And/Or Manufacturing)

63.     Plaintiff re-alleges the allegations of Paragraphs 1 through 54 of this Complaint as if all of those allegations were specifically stated in this cause of action.

64.     Defendant is the manufacturer of Honor Guard pistols, a product which Defendant offers for sale throughout the State of Florida.

65.     Defendant had a duty to design and manufacture its pistols in such a way so as to make those pistols reasonably safe for use.

66.     Defendant has breached that duty.  Instead, Defendant has designed and manufactured pistols which are not drop-safe and discharge when accidentally dropped from just a few feet.

67.     Plaintiff purchased the Honor Guard Pistol on January 23, 2019 in St. Augustine, Florida.

68.     On May 23, 2019, Plaintiff sustained grievous injuries when he accidentally dropped that pistol.  Huang did not grab at or touch the trigger as the handgun fell; in fact, the

pistol remained holstered during its fall. Nonetheless, upon hitting the ground, the Honor Guard Pistol discharged, shooting Plaintiff in the leg.

69. The Honor Guard Pistol was not drop-safe and was defective and unreasonably dangerous. The Honor Guard Pistol's defect existed when the pistol left Defendant's control, as well as when the pistol shot Plaintiff. Plaintiff made no alterations, changes or modifications to the Honor Guard Pistol.

70. Defendant's negligent design and manufacture of the Honor Guard Pistol was the proximate cause of Plaintiff's injuries. Indeed, had that pistol been drop-safe, it would not have discharged when accidentally dropped by Plaintiff.

71. As a result of Defendant's negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

72. By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for compensatory damages in an amount to be determined at trial, but in excess of $75,000.

## COUNT III

**(Damages: Strict Liability Failure To Warn)**

73. Plaintiff re-alleges the allegations of Paragraphs 1 through 54 of this Complaint as if all of those allegations were specifically stated in this cause of action.

74. Defendant is the manufacturer of Honor Guard pistols, a product which Defendant offers for sale throughout the State of Florida.

75. Defendant has known since at least December 2017 that Honor Guard pistols are not drop-safe and are unreasonably dangerous.

76. Plaintiff purchased the Honor Guard Pistol on January 23, 2019 in St. Augustine, Florida.

77. Nowhere on the packaging or in any of the materials that Defendant provided with the Honor Guard Pistol did Defendant warn Plaintiff that: (a) the pistol was not drop-safe, and/or (b) the pistol required the installation of additional "upgrades."

78. On May 23, 2019, Plaintiff sustained grievous injuries when he accidentally dropped the Honor Guard Pistol. Huang did not grab at or touch the trigger as the handgun fell; in fact, the pistol remained holstered during its fall. Nonetheless, upon hitting the ground, the Honor Guard pistol discharged, shooting Plaintiff in the leg.

79. Defendant's failure to warn Plaintiff that Honor Guard pistols can discharge when accidentally dropped, or to warn Plaintiff that the pistol required an "upgrade," is the proximate cause of Plaintiff's injuries.

80. As a result of Defendant's defective product and failure to warn, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

81. By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for compensatory damages in an amount to be determined at trial, but in excess of $75,000.

## COUNT IV

**(Damages:  Negligent Failure To Warn)**

82. Plaintiff re-alleges the allegations of Paragraphs 1 through 54 of this Complaint as if all of those allegations were specifically stated in this cause of action.

83. Defendant is the manufacturer of Honor Guard pistols, a product which Defendant offers for sale throughout the State of Florida.

84. Defendant has known since at least December 2017 that Honor Guard pistols are not drop-safe. Defendant had a duty to warn purchasers like Plaintiff that Honor Guard pistols are not drop-safe.

85. Plaintiff purchased the Honor Guard Pistol on January 23, 2019 in St. Augustine, Florida.

86. Nowhere on the packaging or in any of the materials that Defendant provided with the Honor Guard Pistol did Defendant warn Plaintiff that: (a) the pistol was not drop-safe, and/or (b) the pistol required the installation of additional "upgrades."

87. Defendant breached its duty to warn Plaintiff that the Honor Guard Pistol was not drop-safe or that it required an additional "upgrade."

88. On May 23, 2019, Plaintiff sustained grievous injuries when he accidentally dropped that the Honor Guard Pistol. Huang did not grab at or touch the trigger as the handgun fell; in fact, the pistol remained holstered during its fall. Nonetheless, upon hitting the ground, the Honor Guard pistol discharged, shooting Plaintiff in the leg.

89. Defendant's unreasonable failure to warn Plaintiff that Honor Guard pistols can discharge when accidentally dropped, or to warn Plaintiff that the pistol required an "upgrade," is the proximate cause of Plaintiff's injuries.

90. As a result of Defendant's negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

91. By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant for compensatory damages in an amount to be determined at trial, but in excess of $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant and grant the following relief:

(a) On Count I, judgment against Defendant for compensatory damages, in an amount to be determined at trial, but in excess of $75,000;

(b) On Count II, judgment against Defendant for compensatory damages, in an amount to be determined at trial, but in excess of $75,000;

(c) On Count III, judgment against Defendant for compensatory damages, in an amount to be determined at trial, but in excess of $75,000;

(d) On Count IV, judgment against Defendant for compensatory damages, in an amount to be determined at trial, but in excess of $75,000;

(e) Reimbursement of costs and expenses, including attorneys' fees, incurred by Plaintiff in prosecuting this action;

(f) Prejudgment interests at the maximum legal rate; and

(g) An award of such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all of the claims asserted in this Complaint that are triable to a jury.

DATED:  Jacksonville, Florida
           July 5, 2019

                                              Respectfully submitted,

By: /s/ Chris L. Sprengle
Chris L. Sprengle, Trial Counsel
Florida Bar ID No. (147930)
Berg & Androphy
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Tel: (646) 766-0073
Fax: (646) 219-1977
csprengle@bafirm.com

*Attorney for Plaintiff*